## STATE *v.* SHANAHAN.

On the trial of an indictment for wilfully suffering one F. to occupy a saloon for the illegal sale of intoxicating liquors, under chapter 3, section 5, Laws of 1870, the prosecution proved that the defendant by a written lease let F. the saloon for the illegal sale of liquor, on an understanding that F. was to occupy it for that purpose, and F. did occupy it for that purpose, with the assent of the defendant. *Held* sufficient to sustain the allegation of the indictment.

INDICTMENT against James Shanahan, upon sec. 5, ch. 3, Laws of 1870, for wilfully suffering one Fisk to occupy a saloon for the illegal sale of intoxicating liquors. The defendant lived over a store in which he carried on business, within a few feet of the saloon, in the village of Milford. Subject to his exception, the state was allowed to introduce evidence of the general reputation, in Milford, of the saloon as a place where intoxicating liquors were sold, and the court instructed the jury that this evidence was competent to be considered on the question of the defendant's knowledge of the use made of the saloon. Fisk occupied the saloon from the first of June, 1873, to October 13, 1873, under a written lease from the defendant to Perkins, and a sale by Perkins to Fisk of his interest in the lease, Fisk paying the rent to the defendant. October 13, 1873, the defendant gave Fisk a written lease, under which he occupied to the time of the trial. Subject to exception, the court instructed the jury that if the defendant, by his lease to Fisk, wilfully let Fisk the saloon for the illegal sale of intoxicating liquors, on an understanding that Fisk was to occupy it for that purpose, and if Fisk did occupy it for that purpose under the lease, with the assent of the defendant, the allegation of the indictment that the defendant suffered Fisk to occupy it for that purpose would be maintained. The defendant claimed that such facts would sustain an allegation of letting, but not an allegation of suffering.

The only facts in controversy were the defendant's knowledge, and his suffering Fisk to occupy the saloon.

Verdict guilty; motion of the defendant for a new trial.

The case was reserved.

*Geo. Y. Sawyer & Sawyer, Jr.*, for the defendant.

Section 5, ch. 3, Laws of 1870, upon which this indictment is founded, has two branches: first, "if any person shall wilfully"—that is, knowingly—"let any premises which he owns or has the control of for the purpose of being used as a brothel, gaming-house or place, or for the sale of spirituous liquors therein, he shall be fined;" and, second, "if any person shall wilfully  *  *  suffer any other person to occupy any premises which he owns or has the control of for the pur-

pose, &c., he shall be fined." Two distinct offences are here declared, —one, wilfully "letting" premises for either purpose; the other, wilfully suffering them to be occupied for either. The former offence is completed by the mere giving of a lease for either purpose. Letting, as here used, means leasing, in writing or by parol, and implies possession under the lease. If a written lease should contain in the habendum clause the words "to be used for a brothel," it is, we think, quite clear that an indictment could be maintained upon the first branch of the section without waiting for proof that the premises had been so used. It is readily seen that the legislative intention was to meet the mischief at the threshold by making it penal to give such a lease, as preparing for and promoting a future violation of the law in the use to which the premises are to be put, whether they are in fact put to the contemplated use or not.

The second branch of the section is aimed at a different class of cases, consisting of acts, not in anticipation of and preparing for future contemplated violations of the law, which may never be committed, but in participating and coöperating in actual violations—"wilfully suffering" them to be done.

In giving a construction to this phrase, it is to be remembered that this is a penal statute, to be construed strictly—not to be enlarged and expanded by judicial construction to embrace cases for punishment not within its letter. "To suffer" an act to be done, must mean in such statute not to hinder it, having the power to hinder at the time when the act is being done. To suffer a sale to be made on my premises, clearly implies, in a penal statute, my dominion and control over the premises at the time of the sale. To suffer my premises to be occupied for the illegal sale of liquors, implies a previously existing occupancy continued to that time, and my right at the time to interrupt the occupancy and oust the occupant.

If the occupancy commenced under the agreement that it was to be for that purpose, it would be a "letting," and punishable under the first branch.

The owner parts with the possession by "letting" his premises. The verb "to let" means to lease, in its application to real estate, "to grant possession and use"—Worcester's Dict., Let. By letting he has disabled himself from interposing to hinder the illegal sale. Parting with the control of his premises for the purpose of their being used in an illegal business, he is punishable for thus letting, whether the illegal use follows or not. But when the occupancy remains subject to his control, he suffers the illegal sale, or occupancy for such sale, by refraining to interpose and prevent it at the time the premises are in fact so used. In no other way can he be said to suffer the use. The case of a trespasser using the premises as a place for selling liquors, or of one licensed to enter and plant a tent or booth for a day or an hour at a fair or an old-fashioned muster, would furnish instances of the owner's suffering the illegal occupation if he knows that illegal sales were in fact made, and he acquiesced without interposing his power to prevent.

Letting a building for the purpose of being used for the illegal sale of liquors, implies a purpose contemplated and understood at the time of letting, but not then executed.   Suffering the building to be occupied for that purpose, as fully implies that it is in fact so used at the time of suffering.

Now, if the leasing of a building for a term of years for the purpose of its being used for the sale of liquor, followed by such use, is by judicial interpretation to be brought within the meaning of the act declaring it punishable to suffer the building to be so occupied, why is not a sale of the building for that express purpose, followed by such use, equally within its meaning ?   True, the mere sale for that purpose is not punishable as the mere leasing is ; but this tends to show the legislative intent to be, that the phrase " to suffer the occupation" shall not be construed to include the leasing followed by the illegal use ; for if it is, why punish the leasing, whether followed by the use or not, and also punish it if followed by the illegal use as being within the meaning of the phrase ?   If the leasing for the illegal purpose disables the owner from hindering the illegal use, and thereby he comes within the provision of suffering the illegal occupancy, still more effectually does the sale for such purpose disable the owner.   The one is the owner, and has control at the time of sale ; the other, at the time of the lease.   No reason can be suggested why the lessor is to be held within the penalty of the act so construed, which does not apply with equal or greater force to the vendor.

The instructions authorized a verdict of guilty on the indictment for suffering Fisk to occupy for the illegal purpose, when the illegal sales may all have been after the delivery of the lease, and were erroneous.

The court also erred in allowing evidence of the general character of the place.   Upon this evidence the jury were at liberty to find against the defendant, though they were satisfied that the lease was not given upon the understanding that the premises were to be used for the illegal traffic, and when he knew nothing of it except that it had such reputation.

*Wallace*, for the prosecution.

LADD, J.   Under the instructions excepted to, before the jury could find the defendant guilty, they must find that, by his lease, he wilfully let Fisk the saloon for the illegal sale of intoxicating liquor, on an understanding that he was to occupy it for that purpose, and that Fisk did occupy it for that purpose with the assent of the defendant.   The defendant says this shows a letting, but not a wilful suffering of the premises to be occupied for the illegal purpose, within the meaning of the statute.   The court are of opinion that it shows both ; and but for the vigor with which the eminent counsel for the defendant have maintained the opposite view, I confess the point would seem to me so clear as almost to defy argument or illustration.   I let my house for a term,—say five years,—to be used for a certain purpose, with the

understanding that it is to be occupied and used for that purpose; it is so used with my assent. Do I *suffer* my property to be occupied for the purpose specified? Counsel say, no; but that the case of a trespasser using the premises as a place for selling liquors, or of one licensed to enter and plant a tent or booth for a day or an hour at a fair or old-fashioned muster, would furnish instances of the owner's suffering the illegal occupation, if he knows that illegal sales were in fact made, and he acquiesced without interposing his power to prevent. Where is the difference? If I can by one act of volition suffer my premises to be used for a given purpose for an hour, or a day, why not for a year, or five years?

It is argued that by the lease the premises passed out of the control of the defendant, and that he cannot be said to have suffered what he had no power to prevent. It is not to be admitted that a landlord has no power to prevent the use of his premises for the purpose of committing crime therein. But how that point is to be reached in the present case I do not clearly see; for the instruction requires that the illegal business should have been carried on with the assent of the defendant. How it might be had he disapproved and remonstrated, taking no efficient steps to turn the tenant out, or put a stop to his criminal acts, we need not inquire, because he did not do so much as this. He assented when he executed the lease, understanding for what purpose the building was to be used; he assented afterwards, when he knew what was going on. If the word suffer, as here used, means to permit; and not to undergo pain, it is not easy to imagine by what contortion of the language it can be said that he did not suffer the premises to be used as they were used, for the sale of liquor.

It is asked, If the leasing of a building for a term of years for the purpose of its being used for the sale of liquor, followed by such use, is by judicial interpretation to be brought within the meaning of the act declaring it punishable to suffer the building to be so occupied, why is not a sale of the building for that express purpose, followed by such use, equally within its meaning? The question obviously omits one important condition in the present case, namely, the assent of the lessor to the use after the execution of the lease; still, it would certainly seem to be sufficiently answered by the fact that in the case of a sale the grantor, after the execution of the deed, would neither own nor have the control of the premises, one of which conditions must exist in order to bring the case within the terms of the statute. The analogy which counsel seek to establish fails, from the material fact that the lessor continues to be the owner after the lease.

It is, of course, immaterial that the evidence showed an illegal letting.

We are of opinion that the evidence as to the general reputation of the place kept by Fisk was admissible for the purpose stated.

*Exceptions overruled.*